BRECKENRIDGE *v.* TIME, INC.

No. 43617          November 1, 1965          179 So. 2d 781

*Laurel G. Weir,* Philadelphia, for appellant.

*Jack W. Brand, Robert G. Gillespie, Jr., Earl T. Thomas, Alex A. Alston, Jr., Wells, Thomas & Wells,* Jackson; *Harold R. Medina, Jr., Cravath, Swaine & Moore,* New York, N. Y., for appellee.

838

ETHRIDGE, P. J.

Charles Breckenridge, appellant, brought this libel suit in the Circuit Court of Neshoba County, Mississippi against Time, Inc. We affirm the trial court's dismissal of the declaration for want of in personam jurisdiction over the defendant.

Time, Inc. publishes "Life" magazine, which has a national circulation, including Neshoba County and Mississippi. In the "Life" issue dated July 3, 1964 there was a story with pictures about the then mysterious disappearance of three civil rights workers in Neshoba County. One picture showed law enforcement officers searching for the three men in a swamp. Another pic-

ture showed nine young men, among whom was plaintiff, standing on a bridge above the swamp and laughing. Above this picture was the caption, "IN THE SWAMP, THE SEARCHERS ... ON THE ROAD, A JEERING GALLERY ... Jeerers. While the search goes on, locals — some barefoot — gawk from a nearby bridge. They guffawed when one hooted, 'We throw two or three niggers in every year, to feed the fish.' "

The declaration charged that before July 3, 1964 the defendant came into Neshoba County and without plaintiff's permission made his picture and published it "with a false and slanderous statement concerning" him; that plaintiff was not jeering; that the article accused him of jeering or making fun of the law officers investigating the matter; and that all of the statements on the caption to the picture were false. It averred that defendant, by publishing the picture and statements, intended to and did imply falsely and maliciously that plaintiff was not a citizen who would uphold the law and who jeered at law officers, acted stupid, and made fun of the investigation being conducted; that these statements injured plaintiff's good name and reputation, brought him into public disgrace and scandal, and embarrassed and humiliated him, causing him damages.

Time, Inc., appeared solely and specially for the purpose of moving the court to dismiss the action, on the ground that it was incorporated under the laws of New York with its principal office in the State of New York, was not doing business in Mississippi, and did no acts within this state to subject it to the jurisdiction of the state courts. The following facts were developed at a hearing on this motion.

Defendant's principal offices are in New York City, with its circulation office in Chicago, Illinois. It is not qualified to do business in the State of Mississippi, and has no property or assets of any kind in this state. It leases no office space, maintains no bank accounts or

corporate books or records, and does not execute contracts in Mississippi. None of its officers or directors resides here, it has no mailing address or telephone listing in Mississippi, and no agent to accept service of process. Time, Inc. does not pay any taxes in this state, does not purchase supplies and equipment, and has no employees or managers in Mississippi. It does not collect bills or accept payment for services rendered in Mississippi.

Time, Inc. publications gather news from the dispatches of the Associated Press, from one hundred staff correspondents employed on a salary basis, and from the dispatches of 350 ''stringers,'' who are independent third parties paid by Time, Inc. on a per job basis. They are normally local residents of the area which they cover. The actual writing and editing of news stories is done in New York City. Time, Inc. has no news bureau in Mississippi, and none of its staff correspondents is stationed here. It has three ''stringers'' in this state. The article and picture caption involved in this suit were written entirely by Time, Inc. employees in New York, and were printed and distributed from Time, Inc.'s printing plants in Chicago, Los Angeles, and Old Saybrook, Connecticut. The photograph accompanying the article was taken by an independent third party and sold to Time, Inc. outside the state.

Direct solicitations for subscriptions by Time, Inc. are mailed to potential subscribers from the Chicago office, none originating in Mississippi. Acceptance of resulting subscriptions can be made only at the Chicago office. Independent third parties are authorized by Time, Inc. to solicit subscriptions, but they are not authorized to accept subscriptions on behalf of Time, Inc. There are five ''college bureau representatives'' at the universities and colleges in Mississippi. They are independent agents without authority to accept subscriptions, but they solicit them.

Time, Inc. has no employee or agent regularly soliciting advertising in Mississippi, but occasionally a manager or salesman of defendant visits Mississippi and interviews those few corporations which are considered to be possible advertisers. They have no authority to accept orders for advertising, such contracts being entered into in New York. Time, Inc. has sold advertising space to fewer than six Mississippi advertisers within the past year and a half. This is a very small percentage of total advertising revenue. Defendant's annual revenue from local advertisers is minimal.

All subscription copies of Time, Inc. are shipped by United States mail direct from its printing plants, none of which is in Mississippi. Defendant has nothing to do with the actual physical distribution of its magazines. They are shipped to independent wholesale distributors, including five in Mississippi who acquire such magazines by outright purchase. Subscribers are billed from the Chicago office, and wholesalers are billed from the New York office.

Appellant asserts that jurisdiction of Mississippi courts over this cause of action may be based upon the "long arm" statute enacted in 1964. Miss. Laws 1964, ch. 320, being Miss. Code Ann. § 1437 (1964 Supp.). It provides in part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this State as to doing business herein, who shall make a contract with a resident of this State to be performed in whole or in part by any party, in this State, or who shall commit a tort in whole or in part in this State against a resident of this State, or who shall do any business or perform any character of work or service in this State shall, by such act or acts, be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such

nonresident of the Secretary of State of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident, upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident thereto, by any such nonresident, or his, their or its agent, servant or employee.

Because it is not necessary to this decision, we do not consider whether section 1437 applies to causes of action arising before its effective date of July 1, 1964, where the suit is filed on or after that time. For purposes of this case we will assume the statute applies. Moreover, whether we should apply the more limited venue rule of the single publication doctrine, stated in Forman v. Mississippi Publishers Corporation, 195 Miss. 90, 14 So. 2d 344 (1943), to multistate defamation is a complex issue not appropriate to be decided here, in view of necessary disposition of this case on another basis. See 1 Harper & James, The Law of Torts § 516 (1956); Leflar, Conflict of Laws § 112 (1959); Goodrich & Scoles, Conflict of Laws § 93 (1964); Comment, 60 N.W. Univ. L. Rev. 95, 106 (1965); Note, 77 Harv. L. Rev. 1463 (1964); Note, 62 Harv. L. Rev. 1041 (1949); Prosser, Interstate Publication, 51 Mich. L. Rev. 959 (1953); Prosser, Torts § 94 (2d ed. 1955); Pedrick, Freedom of the Press and The Law of Libel: The Modern Revised Translation, 49 Cornell L. Q. 581 (1964).

The circuit court correctly dismissed this action for want of in personam jurisdiction over Time, Inc. Interpreting the several decisions of the United States Supreme Court, we have defined the minimum contacts — fairness test as the outer bounds of state power. Mladinich v. Kohn, 250 Miss. 138, 164 So. 2d 785 (1964), held that Kohn, a Louisiana citizen, was not subject to Mississippi jurisdiction in a slander action for a speech he

made in this state to a religious association on the problems of law enforcement, where "his speech was an isolated, single act, done with no financial gain in view; that this did not constitute the minimal contact sufficient to give this state jurisdiction." Although *Kohn* dealt with section 1437 before the 1964 amendment, it nevertheless defined the constitutional, maximum limits of state power in this way:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. (250 Miss. at 148, 164 So. 2d at 790)

In the instant case Time, Inc. did not purposefully do any act or consummate any transaction in this state, so the cause of action did not arise from any act or transaction in this state. The quality, nature, and extent of the activity of appellee in the forum state were at the most inconsequential. The photographs were taken by an independent photographer in this state. The information was obtained from news services and "stringers" who were not employees of appellee. They sold the picture and information to Time, Inc. in New York.

It would be unreasonable under these facts to assume jurisdiction, and would offend traditional notions of fair play and substantial justice. Those minimal contacts which are prerequisite to personal jurisdiction of the courts of Mississippi over a nonresident defendant

are totally lacking as to appellee. Nor did this action arise out of any commercial or business transaction taking place in this state. Certainly just any inconsequential contact with the state of the forum is not sufficient to support jurisdiction over a nonresident under the due process clause. Hanson v. Denckla, 357 U. S. 235, 78 Sup. Co. 1228, 2 L. Ed. 2d 1283 (1958); Buckley v. New York Times Co., 338 F. 2d 470 (5th Cir. 1964); *cf.* Century Brick Corp. of America v. Carroll, 247 Miss. 514, 153 So. 2d 683 (1963).

Affirmed.

*Rodgers, Jones, Inzer and Smith, JJ.,* concur.