**KAYDEE METAL PRODUCTS CORPORATION, Plaintiff,**

v.

**SINTEX MACHINE TOOL MANUFACTURING CORPORATION, and International Industrial Leasing, Ltd., Defendants.**

**No. EC 71–115.**

United States District Court,
N. D. Mississippi, E. D.
May 10, 1972.

Orma R. Smith, Jr., Corinth, Miss., for plaintiff.

Hunter M. Gholson, Columbus, Miss., for defendant Sintex.

Michael D. Jonas, Aberdeen, Miss., for defendant International.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This diversity action was instituted by Kaydee Metal Products Corporation (Kaydee), plaintiff, a Mississippi corporation, against Sintex Machine Tool Manufacturing Corporation (Sintex), and International Industrial Leasing, Ltd. (International), defendants, both of which are Illinois corporations. Service of process upon each defendant was obtained through the office of the Secretary of State of Mississippi under the provisions of the Mississippi "Long Arm" statute, Miss.Code Ann. § 1437 (Supp.1971).

By the complaint, Kaydee alleges that defendant Sintex is liable for damages arising from breach of express and implied warranties pursuant to a sales contract; further, Kaydee prays for cancellation of a leasing agreement with International, damages arising from breach of the agreement, and discharge of all liability to Kaydee thereunder.

Upon timely motions to dismiss filed by both defendants, this court has previously ordered that the motion filed by Sintex be denied and the motion filed by International be taken under advisement. Memorandum briefs having been submitted by International and Kaydee, the matter is now ripe for the court's decision on International's motion.

The relevant facts may be briefly summarized. As organized in Mississippi, Kaydee had its principal place of business in Tishomingo County and succeeded an Illinois corporation having the same name. Prior to its move from Illinois to Mississippi, Kaydee agreed to purchase from Sintex a metal shearing machine, Model S–104, for a base price of approximately $16,000. The machine was to be manufactured in Milan, Italy, and was to be delivered f. o. b. to Kaydee in Mississippi. All purchase negotiations between representatives of Kaydee and Sintex were conducted in Chicago, Illinois. Kaydee was organized in Mississippi on June 30, 1969, and on October 15, 1969, was dissolved as an Illinois corporation. In accordance with the purchase agreement, the machine was delivered to Kaydee in Mississippi in June 1969; however, the machine was found to be defective. Sintex agreed to replace the machine. A second machine was delivered to Kaydee on March 16, 1970.

Immediately after delivery of the second machine, International, to whom title to the second machine had been transferred from Sintex, prepared and sent by mail a proposed equipment lease

agreement to Kaydee in Mississippi.[1] A corporate representative of Kaydee traveled to Chicago to negotiate with International. On March 19, 1970, a new lease agreement was prepared and executed in Chicago by representatives of Kaydee and International.

By the executed instrument, the lessee was described as Kaydee Metal Products, Highway 25, Belmont, Mississippi, and the lessor as International Industrial Leasing, 111 W. Monroe Street, Chicago, Illinois. The lease term was for a period of 60 months, commencing April 15, 1970. The instrument contained a description of the machine, the delivery terms, and the amount of rent payable. In addition, a significant number of duties and obligations was imposed upon Kaydee, such as: the lessee was required to bear the expense of all necessary repairs, maintenance, operation, and replacement; the lessee was required to cause the equipment to be operated by competent employees only; the lessee was required to indemnify and save the lessor harmless from injury to and loss of equipment from whatever cause and from liability arising out of the use, maintenance and/or delivery thereof; the lessee at its expense was required to keep the equipment insured; the lessee was required to promptly pay all taxes, assessments, or other governmental charges levied or assessed, etc. The lease required Kaydee to keep the equipment at the Mississippi location until International gave written permission for its removal.

During the months following the execution of the lease, Kaydee notified Sintex that the performance of the second machine was unsatisfactory and that it did not meet its warranty. Sintex dispatched certain representatives and service personnel to Mississippi in an effort to correct the machine's shortcomings but were unable to do so to the satisfaction of Kaydee. Finally, on March 12, 1971, Kaydee notified Sintex that if Sintex did not respond to correct the machine's deficiencies, Kaydee would proceed to diminish or mitigate damages. No response from Sintex was forthcoming. Prior to Kaydee's final notification, rent payments of $8,452.40 had been sent by mail to International from Kaydee's Mississippi office.

We now consider the merits of International's motion to dismiss the complaint. The essence of International's motion is that this court is without in personam jurisdiction. Specifically, International asserts that it is an Illinois corporation not qualified to do nor doing any business within the State of Mississippi nor having any other relations with this state or a resident of this state sufficient to render it amenable to process in Mississippi under this state's "Long Arm" statute, Miss.Code Ann. § 1437.

Kaydee asserts that in personam jurisdiction over International is properly based upon that portion of the 1964 amendment to § 1437 commonly known as the "single contract" provision.[2]

---

1. The exact date on which title to the second machine was transferred to International is disputed; however, it is uncontroverted that ownership was vested in International at the time the proposed lease agreement was mailed to Kaydee in Mississippi.

2. The relevant portion of § 1437 provides: "Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this State as to doing business herein, *who shall make a contract with a resident of this*

*State to be performed in whole or part by any party in this State,* . . . shall by such act or acts be deemed to be doing business in Mississippi. Such act or acts shall be deemed equivalent to the appointment by such nonresident of the Secretary of State of the State of Mississippi, or his successor or successors in office, to be the true and lawful attorney or agent of such nonresident upon whom all lawful process may be served in any actions or proceedings accrued or accruing from such act or acts, or arising from or growing out of such contract or tort, or as an incident there-

■ Initially, this court must necessarily address itself to the question of whether the circumstances of this case allow the assumption of in personam jurisdiction without abridging International's right under the due process clause of the Fourteenth Amendment. Accordingly, having closely examined International's relationship with Kaydee and the State of Mississippi, we conclude that the circumstances existing herein are not inconsistent with those deemed sufficient in McGee v. International Life Ins. Co., 355 U.S. 220, 78 S. Ct. 199, 2 L.Ed.2d 223 (1957). In *McGee,* the Supreme Court of the United States upheld a California statute which permitted service of process on a nonresident insurance company as consistent with due process even though the nonresident company had never maintained an office or agent in California nor ever done any business in California other than the transaction from which the case arose. Indeed, the extent of the nonresident company's contact with the forum state was the mere solicitation by mail of a life insurance contract which was accepted by a resident of California. The policyholder mailed premiums from California to the nonresident insurance company.

The relationship of the nonresident to the forum state in *McGee* has generally been accepted as the barest minimum which must exist without infringement of due process. In the present case, we view the nature of International's relations with the forum as amply more than the "minimum contact" standard expressed in *McGee.* The record clearly discloses that International owned valuable equipment located in Mississippi; International solicited execution of a proposed lease of the equipment by mail sent to Kaydee at its Mississippi address; International knew that it was dealing with a Mississippi corporation when the equipment lease was executed;

the terms of the executed lease contemplated operation and maintenance of the equipment in Mississippi; rental payments for equipment were mailed from Mississippi; and the lease agreement was substantially performed in Mississippi.

■ In view of the constitutional requirement of due process, it is incumbent upon this court to consider Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 (1958), where the Supreme Court reasoned that "[t]he *unilateral activity* of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (Emphasis added.) In the present case, International urges that its sole obligation under the executed lease was simply to let the equipment remain in Mississippi undisturbed. It is unnecessary to decide whether this obligation alone would be sufficient activity to impose jurisdiction since we must view the quality and nature of the party's activities in their entirety. So doing, we find no basis for International's claim that the relationship to Mississippi is unilateral on the part of Kaydee.

■ Since due process poses no issue, we must determine if Mississippi's "single contract" statutory provision reaches far enough to confer in personam jurisdiction over International. This court is Erie-bound to construe the reach of the "single contract" clause consistent with the interpretation of the Supreme Court of Mississippi.[3] However, there being no state court interpretation precisely in point, we must necessarily reach conclusions which are consistent with: (1) the legislative intent manifested by the statutory wording of the 1964 amendment to § 1437; and (2) the latest decision by the state Supreme Court construing the statute.

Prior to the 1964 amendment, § 1437 required that only nonresidents who

to by any such nonresident or his, their, or its agent, servant or employee." (Emphasis added.)

3. Walker v. Savell, 335 F.2d 536 (5 Cir. 1964).

were deemed "doing business" in Mississippi would be amenable to process. Traditionally, the decisions of the Supreme Court of Mississippi interpreting the "doing business" provision required a broader range of contact with Mississippi than those acceptable as sufficient to protect due process by the minimum contacts test.[4] The clear language of the amended statute contemplates expansion of the "doing business" basis for jurisdiction to include nonresidents who "shall make a contract with a resident of this State to be performed in whole or in part by any party in this State, or who shall commit a tort in whole or in part in this State against a resident of this State. . . . " Miss.Code Ann. § 1437.

Although the Supreme Court of Mississippi has not directly construed the "single contract" category contained in the 1964 amendment, it has recently affirmed jurisdiction as to a nonresident defendant based upon the "single tort" provision. In Smith v. Temco, Inc., 252 So.2d 212 (Miss.1971), the court commented on the legislative purpose of both new provisions (p. 215):

"By the insertion of the new matter, there can be no doubt that *the intention of the Legislature was to broaden the scope of the statute and to enlarge the jurisdiction of the Mississippi courts* so as to reach nonresident defendants in two new and distinct categories: (1) *The nonresident defendant who shall make a contract with a resident to be fulfilled in the State in whole or in part*, and the (2) nonresident defendant who shall commit a tort, in whole or in part, in this State against a resident of the State." (Emphasis added.)

The *Temco* decision adopted the reasoning of Dawkins v. White, etc., supra, where the Fifth Circuit expressly approved assumption of in personam jurisdiction over nonresidents upon the "single tort" provision. *Dawkins* also referred to the legislative intent regarding the addition of the "single contract" provision, as follows:

" . . . [I]n view of the very apparent intent to the legislature to add the contract basis and the local tort basis to the already existing basis of doing business within the state, we are inclined to follow the clear language of the statute in the absence of any Mississippi decision that states that these additional bases added nothing to the statute." 443 F.2d at 594.

In Breedlove v. Beech Aircraft Corp., 334 F.Supp. 1361 (N.D.Miss.1971), this court specifically adopted the "single tort" provision as a proper basis for acquiring jurisdiction over a nonresident defendant. We there recognized the present trend of the state Supreme Court to broaden the scope of in personam jurisdiction in tort cases, and are persuaded that the same result is required in the "single contract" case by a plain reading of the amended statute. The clear facts show that International made a contract with Kaydee, a resident of this state, to be performed at least in part in Mississippi, and such activity has subjected International to the court's personal jurisdiction. International's motion to dismiss is, therefore, denied.

An order will be entered accordingly.

4. In Dawkins v. White Products Corp. of Middleville, Michigan, 443 F.2d 589, 591 (5 Cir. 1971), the Fifth Circuit said that "the Mississippi Supreme Court had construed the long arm statute of that state much more narrowly than required by the federal constitution." See, e. g., Breckenridge v. Time, Inc., 253 Miss. 835, 179 So.2d 781 (1965); Mladinich v. Kohn, 250 Miss. 138, 164 So.2d 785 (1964).